Entered: September 30th, 2019
Signed: September 30th, 2019

SO ORDERED



LORI S. SIMPSON
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | |
| Sam E Arthur, | * | Case No. 17-17484-LSS |
|     Debtor, | * | Chapter 7 |
| | * | |
| * * * * * * * | * * * * * * | |
| Chidinma O. Onuma and Charles Iweanoge, | * | |
|     Plaintiffs, | * | |
| v. | * | Adv. No. 17-00328 |
| | * | |
| Sam E. Arthur, | * | |
|     Defendant. | * | |
| | * | |

## MEMORANDUM OPINION

Plaintiffs object to the dischargeability of a previously liquidated debt pursuant to 11 U.S.C. § 523(a)(2)(A). This matter came before the Court for a trial on August 7, 2019. After submission of the parties' written closing statements on August 20, 2019, the Court took the matter under advisement. After considering the evidence, assessing the reliability of the witnesses' testimony and documentary evidence, considering the arguments of the parties, and reviewing the record, the Court finds and concludes that Plaintiffs have shown that $63,287.59 of their claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), but have failed to sustain their burden of

establishing that the remainder of their claim is nondischargeable.

This Court has jurisdiction to hear this adversary proceeding, pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52, made applicable to this contested matter by Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent appropriate, the findings of fact set forth herein shall be deemed conclusions of law and vice versa.

## I.  Findings of Fact.

Chidinma O. Onuma and her husband owned and operated Diversified Transportation Services, Inc. ("DTS")[1], a bus company that primarily generated income through contracts with the District of Columbia. DTS received beneficial treatment in the government contract bidding process because it was certified as a Disadvantaged Business Enterprise ("DBE") by the District of Columbia. In March 2013, Ms. Onuma's husband died. Ms. Onuma attempted to continue operating DTS by herself but, after a few months, decided that she was unable to do so. In the fall of 2013, Ms. Onuma began looking for a buyer for DTS.

Sam E. Arthur, a certified public accountant, learned of Ms. Onuma's desire to sell DTS from a mutual acquaintance. In October 2013, Mr. Arthur met with Ms. Onuma to discuss the possibility of purchasing DTS. At the meeting, Ms. Onuma explained DTS's operations and its earning potential to Mr. Arthur. Following this meeting, the parties executed a Letter of Intent

---

[1] Contributing to the evidentiary difficulty in this adversary proceeding is the parties' propensity for misnaming persons and entities. The documents in evidence include references to DTS using various monikers including, Diversified Transportation Services, Inc., Diversified Transportation Service, Inc, and Diversified Transportation, Inc. All evidence before the Court suggests that the parties intended to refer to DTS each time they used one of these or a similar name, and the Court so finds.

2

dated October 29, 2013, wherein the parties expressed their intent to enter into a purchase agreement for the sale and purchase of DTS for $150,000.00.  The Letter of Intent provided Mr. Arthur access to DTS's books and records so that he could perform a due diligence review of the company.  The parties to the Letter of Intent are identified as "Sam Arthur ("Buyer")" and "Chidiouma (Last name) ("Seller")."  Mr. Arthur executed the Letter of Intent as "Sam Arthur, President."  Ms. Onuma executed the Letter of Intent as "Chidinma O. Onuma, Owner."

Following Mr. Arthur's due diligence review, the parties executed an Agreement for the Sale of Diversified Transportation Service, Inc. (the "Purchase Agreement").  The parties to the Purchase Agreement are identified on the cover page as Chidinma Onuma and The Arthur Group, LLC.  Ms. Onuma was identified as the seller and executed the Purchase Agreement as "Chidinma Onuma."  The purchaser/buyer was referred to within the Purchase Agreement as either "The Arthur Group" or "The Arthur Group, LLC."  Mr. Arthur executed the Purchase Agreement on behalf of the purchaser/buyer as "Sam Arthur, Officer."  At the time the Purchase Agreement was executed, The Arthur Group, LLC was not an entity formed under the laws of Maryland, the District of Columbia, or any other jurisdiction.

In the Purchase Agreement, the parties agreed to a reduced purchase price of $130,000.00.  Mr. Arthur would pay the purchase price as follows: $5,000.00 upon execution of the Purchase Agreement, $20,000.00 after all of DTS's creditors were identified, and the remaining $105,000.00 within two months of the parties' execution of the Purchase Agreement or "after satisfying pre-existing monetary obligations of the seller," whichever was earlier.  Mr. Arthur paid $5,000.00 to Ms. Onuma at the time the Purchase Agreement was executed.

In the months following the execution of the Purchase Agreement, Mr. Arthur grew disenchanted with DTS.  Mr. Arthur expected great profits and expected Ms. Onuma to handle

3

renewal of DTS's DBE status. Mr. Arthur determined that Ms. Onuma was to blame for these difficulties. Mr. Arthur attempted unsuccessfully to renegotiate the terms of the Purchase Agreement, specifically the payment terms. Ms. Onuma continued demanding payment of the full purchase price. Mr. Arthur made small additional payments but never paid the full amount of the purchase price. In total, Mr. Arthur paid only $12,000.00 to Ms. Onuma toward the purchase price.

On October 22, 2014, Ms. Onuma, through her counsel Charles Iweanoge, Esq., filed a Complaint (the "D.C. Complaint") against Sam Arthur and The Arthur Group, LLC in the Superior Court of the District of Columbia. Ms. Onuma alleged that Mr. Arthur has paid only $12,000.00 of the $130,000.00 purchase price for DTS. Ms. Onuma asserted two causes of action, breach of contract and fraud. With respect to the fraud cause of action, Ms. Onuma alleged two misrepresentations. First, that Mr. Arthur executed the Purchase Agreement in the name of a fictitious entity. Second, that Mr. Arthur never intended to pay the purchase price.

On March 20, 2017, the D.C. Superior Court case went to trial. On March 23, 2017, the jury announced its verdict in favor of Ms. Onuma on both causes of action. The jury awarded Ms. Onuma $118,000.00 for breach of contract (the "Breach of Contract Award") and $10,000 plus attorney's fees and expenses for fraud (the "Fraud Award"). The D.C. Superior Court entered a Judgment (the "Judgment") awarding Ms. Onuma $128,000.00 with interest. On May 2, 2017, the D.C. Superior Court entered an Order setting the total amount of the attorney fee award at $50,976.00 (the "Attorney Fee Award") and the amount of Ms. Onuma's costs at $2,311.59 (the "Costs Award").

On May 31, 2017, Mr. Arthur filed his Chapter 7 Voluntary Petition in this Court, thereby opening the underlying Chapter 7 case. (Case No. 17-17484-LSS, Dkt. No. 1). In his Schedule E/F, Mr. Arthur scheduled, among others, unsecured debts of $128,000.00 to Chidinma Onuma for

4

"Consumer Debt" and $51,000.00 to Charles Iweanoge, Esq. for "Consumer Debt – Attorney fees." *Id.* at p. 22.

On August 23, 2017, Ms. Onuma and Mr. Iweanoge (collectively, "Plaintiffs") initiated this Adversary proceeding by filing their Complaint Objecting to Discharge of the Debtor and/or to Determine Nondischargeability of Debt [Dkt. No. 1]. Plaintiffs asserted a claim that the entire above-described debt, including the Breach of Contract Award, Fraud Award, Attorney Fee Award, and Costs Award, was nondischargeable based on common law fraud and 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), 523(a)(6), and (a)(11). Plaintiffs also asserted claims for denial of discharge pursuant to 11 U.S.C. §§ 727(a)(2), 727(a)(3), 727(a)(4).

On September 27, 2017, Mr. Arthur filed a Motion to Dismiss [Dkt. No. 6], seeking dismissal of all claims, except Ms. Onuma's claim under 11 U.S.C. §§ 523(a)(2). Mr. Arthur asserted that Mr. Iweanoge was not a creditor of Mr. Arthur and, therefore lacked standing to assert claims for nondischargeability or denial of discharge. On January 11, 2018, the Court entered an Order Granting in Part, and Denying in Part Defendant's Motion to Dismiss [Dkt. No. 32]. The Court ordered that Mr. Iweanoge had standing to pursue nondischargeability because Mr. Arthur had scheduled him as a creditor. The Court dismissed Plaintiffs' claim for nondischargeability based on common law fraud, § 523(a)(4), and § 523(a)(11), as well as their claims for denial of discharge under §§ 727(a)(2), 727(a)(3), and 727(a)(4). The Court granted Plaintiffs leave to amend their claim for denial of discharge under § 727(a)(2).

Plaintiffs filed an Amended Complaint [Dkt. No. 31] on December 28, 2018, asserting claims under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(6), and 727(a)(2). On January 11, 2019, Mr. Arthur filed a Motion to Dismiss Amended Complaint [Dkt. No. 33]. On April 12, 2018, the Court entered an Order Granting in Part, and Denying in Part Defendant's Motion to

5

Dismiss [Dkt. No. 45]. The Court dismissed all claims except Plaintiff's claim under 11 U.S.C. § 523(a)(2)(A).

**II.     Conclusions of Law.**

*A.     Section 523(a)(2)(A).*

Section 523(a)(2)(A) excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." In other words, "Congress excepted from discharge . . . debts in which the debtor used fraudulent means to obtain money, property, services, or credit." *In re Rountree*, 478 F.3d 215, 219 (4th Cir. 2007).

The creditor asserting a claim under § 523(a)(2)(A) must establish the following by a preponderance of the evidence: "(1) that the defendant made a representation, (2) that the defendant knew at the time the representation was made that it was false, (3) that the defendant made the representation with the intent and purpose of deceiving the plaintiff, (4) that the plaintiff justifiably relied upon the false representation, and (5) that the plaintiff suffered damages as a proximate result of the representation." *In re Rixham*, 578 B.R. 287, 307 (Bankr. D. Md. 2017). "Once it is established that specific money or property has been obtained by fraud, . . . 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998). This exception to discharge extends to "treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Id*. at 223. As with all exceptions to discharge, the Court must construe § 523(a)(2)(A) narrowly, "to protect the purpose of providing debtors a fresh start." *In re Rountree*, 478 F.3d at 219.

6

### B.     *Preclusive Effect of the Judgment.*

Dischargeability determinations are within the exclusive jurisdiction of the bankruptcy court. *See generally In re Chu*, 2019 WL 4130869, *3 (Bankr. D. Md. Aug. 29, 2019). Nevertheless, the preclusive effect of a prior judgment may significantly narrow the justiciable issues in a dischargeability proceeding. For example, claim preclusion applies such that the prior judgment is conclusive as to the existence, amount, and validity of the debt. *See id.* (*citing In re Crespin*, 551 B.R. 886, 897 (Bankr. D.N.M. 2016); *In re Wisell*, 494 B.R. 23, 29 (Bankr. E.D.N.Y. 2011)). More importantly, issue preclusion applies such that the bankruptcy court must give the prior court's judgment "the same [issue] preclusive effect as would be given that judgment under the law of the [jurisdiction] in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In the District of Columbia, issue preclusion:

> [R]enders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Modiri v. 1342 Rest. Group, Inc.*, 904 A.2d 391, 394 (D.C. App. 2006) (*quoting Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995)).

    *i.*     *The Fraud Award.*

In dischargeability proceedings, the bankruptcy court must determine whether the essential factual findings made by the prior court satisfy the elements of § 523(a)(2)(A). *See In re Sparrow*, 306 B.R. 812, 826 (Bankr. E.D. Va. 2003). At a minimum, the prior court's essential factual findings would include the elements of the relevant claim under the law applied by the prior court. *See In re Campbell*, 448 B.R. 876, 882 (Bankr. W.D. Pa. 2011) (holding that victory on fraud claim in previous court was preclusive as to all elements under the state law claim). To prove common-

7

law fraud under District of Columbia law, "a plaintiff must show that the defendant, with the intent to deceive the plaintiff, knowingly made a false representation of a material fact on which plaintiff justifiably and detrimentally relied."  *Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. App. 2017) (*citing Sibley v. St. Albans School*, 134 A.3d 789, 808–09 (D.C. 2016)).   The elements for common law fraud in the District of Columbia mirror those of § 523(a)(2)(A).   Accordingly, the D.C. Superior Court's finding of fraud conclusively establishes the existence of fraud under § 523(a)(2)(A).   As the Fraud Award clearly arises from such fraud, the Court finds and concludes that the Fraud Award is nondischargeable under § 523(a)(2)(A).

   ii. *The Attorney Fee Award.*

In *Cohen,* the Supreme Court was clear that § 523(a)(2)'s exception to discharge extended to awards of attorney's fees so long as such award arose from fraud.  *Cohen*, 523 U.S. at 223.   Here, the D.C. Superior Court awarded Ms. Onuma attorney's fees as a part of the Fraud Award, which is consistent with the District of Columbia's application of the fraud exception to the American Rule. *Ludwig & Robinson, PLLC v. BiotechPharma, LLC,* 186 A.3d 105, 115 (D.C. App. 2018).   Accordingly, the Court finds and concludes that the Attorney Fee Award is nondischargeable under § 523(a)(2)(A).

   iii. *The Costs Award.*

Rule 54(c)(1) of the District of Columbia's Superior Court Rules of Civil Procedure provides that "[u]nless an applicable statute, these rules, or a court order provides otherwise, costs-- other than attorney's fees-- should be allowed to the prevailing party."  D.C. Super. Ct. R. Civ. P. 54(c)(1).   Again, *Cohen* provides that an award of costs is nondischargeable if it arose from fraud. *Cohen*, 523 U.S. at 223.   Assuming *arguendo* that the Breach of Contract Award did not arise from fraud, the Court finds and concludes that the Costs Award arose from fraud because Ms. Onuma's

8

success on her common law fraud cause of action was sufficient to make her the prevailing party in the D.C. Superior Court.   Based thereon, the Court finds and concludes that the Costs Award is excepted from discharge under § 523(a)(2)(A).

        iv.        *The Breach of Contract Award.*

Breach of contract, even if intentional and wrongful, does not, alone, give rise to a nondischargeable debt.   *See In re Heilman*, 241 B.R. 137, 150 (Bankr. D. Md. 1999); *In re Hill*, 425 B.R. 766, 775 (Bankr. W.D.N.C. 2010).   However, where the breach of contract arose from fraud, such as where a debtor entered into the contract with no intention of fulfilling his contractual obligations, the damages awarded therefore are nondischargeable under § 523(a)(2)(A).   *See Heilman*, 241 B.R. at 150 (breach of contact debt is nondischargeable where the debtor 'misrepresented his or her intention to perform contractual duties."); *see also In re Ayesh*, 465 B.R. 443, 452 (Bankr. S.D. Tex. 2011) (finding breach of contract award nondischargeable where "a state law claim for breach of contract is an 'obvious outgrowth of such a false representation.'").   As such, "[t]he fact that a state court labels a judgment 'contract damages' rather than 'fraud damages' does not control the bankruptcy court if the state court's determination did not necessarily include a finding regarding the dischargeability issue (i.e., whether the debt was obtained by false pretenses, a false representation, or actual fraud)."   *Matter of King*, 103 F.3d 17, 19–20 (5th Cir. 1997); *see also In re McClendon*, 415 B.R. 170, 182 (Bankr. D. Md. 2009) (holding that issue of whether breach of contract arose from fraud was not precluded where "state court judgment did not set forth a basis for finding that the debtors possessed a 'present intention' not to repay the plaintiff at the time of the loan.").   Where the prior court apportioned its damage award between a fraud cause of action and a breach of contract cause of action, the breach of contract damages arise from fraud if the two causes of action were "inextricably linked."   *In re Thompson*, 511 B.R. 20 (Bankr.

D. Conn. 2014).

Ms. Onuma raised the issue of Mr. Arthur's intent to perform in the D.C. Superior Court by alleging in the D.C. Complaint that Mr. Arthur had no intention of paying the purchase price when he executed the Purchase Agreement. However, she also alleged that Mr. Arthur defrauded her through his use of a fictitious entity to purchase DTS. Unfortunately, the D.C. Superior Court did not make explicit findings of fact on these or any other issues of fact and the Fraud Award could have been based on a finding that either or both were true. If Mr. Arthur fraudulently executed the Purchase Agreement in the name of a fictitious entity but intended to uphold his contractual obligations, it does not follow that the breach of contract arose from the fraud. Conversely, if Mr. Arthur never intended to pay the purchase price, the breach of contract arose from the fraud. *See In re Heilman*, 241 B.R. at 150. Nothing in the record before this Court illuminates the nature of the fraud found by the D.C. Superior Court. In light of this ambiguity, the Court finds and concludes that it is not precluded from considering whether the breach of contract arose from fraud.

  *C.*  ***Dischargeability of the Breach of Contract Award.***

Based on the evidence before the Court, the Court does not find that Mr. Arthur did not intend to pay the purchase price at the time the parties entered the Purchase Agreement. Instead, it appears that Mr. Arthur expected to rapidly increase DTS's profitability but learned that operation and expansion of DTS was much more complicated than he had expected. When DTS's profits proved significantly lower than he expected, Mr. Arthur refused to pay the agreed purchase price. As such, Mr. Arthur's breach of the Purchase Agreement was not caused by or the result of fraud. Accordingly, the Court concludes that the Breach of Contract Award is dischargeable.

**III.** **Conclusion.**

Based on the foregoing, the Court finds and concludes that it should render judgment in

favor of Plaintiffs, in part. The Court will enter a judgment consistent with this Memorandum Opinion.

cc:   All parties
      All Counsel

**End of Order**